UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID BRYAN BROOKS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 19-1201-JDT-cgc |
| | ) | |
| JACKIE BAUSMAN, ET AL., | ) | |
| | ) | |
|     Defendants. | ) | |

ORDER DISMISSING COMPLAINT AND GRANTING LEAVE TO AMEND

On September 12, 2019, Plaintiff David Bryan Brooks, who is incarcerated at the Henderson County Justice Complex (HCJC) in Lexington, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court subsequently issued an order granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 7.) The Clerk shall record the Defendants as HCJC Lieutenant Jackie Bausman; HCJC Correctional Officer Paula Lockhart; Licensed Practical Nurse (LPN) Luke Goodman; inmate Michael Jowers; Quality Correctional Health Care (QCHC); and the HCJC.

Brooks alleges he has been held in protective custody at the HCJC because of threats he has received. (ECF No. 1 at PageID 2.) On March 23, 2019, he "made an electronic request" about not being allowed to use the phone. (*Id.*) Late that night, and into the next

day, Brooks was allowed his "1 hour out daily," during which he was supposed to be the only inmate out of his cell. (*Id.*) However, while he was out, the electronic lock on the door to his area "popped open" three times, allowing inmate Jowers to enter the area and attack Brooks. (*Id.* at PageID 2, 4.) Brooks alleges that Jowers inflicted "life changing injuries," for which he was denied medical treatment. (*Id.* at PageID 2.)[1]

Brooks alleges that an unnamed nurse signed his initials without his permission on a medical administrative form when he asked what pills he was being given. (*Id.*) He alleges that he has been in severe pain "24 hours [per] day–7 days per week" since the attack but has received no treatment.[2] (*Id.*) Brooks also alleges that unnamed medical staff refused to treat his pain and numerous medical issues from the attack. (ECF No. 1-1 at PageID 5.) He alleges that an unspecified LPN (possibly Defendant Goodman) saw him after the attack but, instead of scheduling him for surgery, merely gave him ibuprofen and sent him back to his cell. (*Id.* at PageID 7.)

Brooks lists specific allegations against each Defendant related to the attack. He alleges that he sent multiple requests for help with his injuries to Lieutenant Bausman but received no response. (ECF No. 1 at PageID 4.) He alleges that he was "locked out" of

---

[1] Brooks details his numerous injuries in an attachment to his complaint. (ECF No. 1-1.) His stated injuries include a herniated bowel; severe right testicular pain; abdominal pain; numbness in his right lower leg, foot and toes; dizziness and nausea; loss of peripheral vision in his right eye; neck and jaw pain; a broken tooth; right shoulder and scapular pain; and various bruises and contusions. (*Id.* at PageID 6.)

[2] Although Brooks alleges that he has been in "severe pain since March 24, 2018," that appears to be a typo. The attack allegedly occurred on March 23, 2019.

2

parts of the electronic kiosk system used to submit grievances on March 24 and 25, 2019, while he was on protective custody. (*Id.*)

Brooks alleges that Officer Lockhart was on duty in the guard tower when Jowers attacked him but did not respond to his call for help until after the beatings had ended. (*Id.*)

He also alleges that LPN Goodman did not respond to his sick-call requests for treatment of his injuries and will not discuss any surgical treatment options. (*Id.*)

Brooks alleges that QCHC also refused to provide treatment or a referral for surgery. (*Id.*) He alleges he saw one doctor in May 2019 who told him his injuries were "repairable by surgery," but QCHC has yet to refer him for the surgery. (*Id.*)

He alleges that the HCJC failed to maintain safe conditions for him in protective custody or render care for his injuries. (*Id.*) Since the filing of the complaint, Brooks has sent the Court three letters in which he details the worsening of his medical conditions. (ECF Nos. 8, 10 & 11.)

Brooks seeks surgery and other medical treatment, payment for that treatment, and compensatory damages. (ECF No. 1 at PageID 3.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

 (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

 (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Brooks filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

It appears that Brooks seeks to hold Lieutenant Bausman liable in her supervisory role as lieutenant. Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. At most, Brooks alleges that Bausman failed to respond to his grievances or letters. A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

Brooks also alleges that he was locked out of the HCJC kiosk for at least a day or two. Several district courts have determined that intermittent denial of access to the kiosk does not plead a constitutional claim. *See Vaughn v. Daviess Cnty. Det. Ctr.*, No. 4:16-CV-P61-JHM, 2016 WL 5843935, at *3 (W.D. Ky. Oct. 4, 2016) (citing cases); *Brown v. Prelesnik*, No. 1:12-CV-873, 2013 WL 838289, at *14 (W.D. Mich. Mar. 6, 2013) (holding that inmates "do[] not have a constitutional right to obtain access to the prison kiosk at every possible opportunity or in the manner of [their] choosing"). Brooks's temporary denial of access to the kiosk system does not state a constitutional claim.

Brooks's allegations against Officer Lockhart amount to a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotations omitted) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners"). To state a claim under the Eighth Amendment, a plaintiff must satisfy an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). That is, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent; that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511

6

U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991). Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837-38.

"[N]ot all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). In the context of a failure-to-protect claim, a prison officer will not be held liable without a showing that he or she "should have been aware of the reasonable likelihood of a potential attack and intervened earlier." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003). "[A] correctional officer who observes an unlawful beating may . . . be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). However, the facts alleged must show that the officers "provid[ed] an opportunity for the attack and d[id] nothing" or remained "idly by while a known attack took place without intervening." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003).

Brooks alleges that Lockhart was on duty in the guard tower when Jowers attacked him but did not respond to the fight until after the beatings ended. A jail incident report Brooks attached to his complaint confirms Lockhart was on duty and shows that Lockhart and three other officers responded to the report of a fight in Brooks's pod. (ECF No. 1-1 at PageID 9.) The officers arrived to find Brooks "laying [sic] face down on the floor" and helped him up to a nearby seat. (*Id.*) Although Brooks alleges that he has received threats in the past, he does not allege that Jowers threatened him or, even if he did, that Lockhart

7

was aware of those threats. Nor does he allege that Lockhart is responsible for Jowers's cell door being opened or had prior knowledge the attack was going to occur. Brooks's allegations do not suggest that Lockhart remained "idly by" while the attack took place. Instead, she responded with other officers when the fight was reported. Even assuming the fight satisfies the objective component of an Eighth Amendment claim, Brooks's allegations do not show that Lockhart was aware of and subjectively disregarded a substantial risk of serious harm to Brooks's safety or health. He therefore does not state an Eighth Amendment claim against her.

Brooks's allegations against LPN Goodman about his medical treatment also amount to a claim under the Eighth Amendment. The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). To establish the subjective component, the plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997).

Brooks's injuries likely qualify as a serious medical condition. However, he does not describe what treatment Goodman provided or explain why that treatment was unconstitutionally inadequate. He merely alleges that Goodman did not discuss surgical treatment options with him. Brooks similarly alleges that unnamed medical staff have refused to treat his pain and the conditions resulting from his injuries and, immediately after the attack, prescribed him only ibuprofen. Given the severity of the attack, it is possible that Brooks has an Eighth Amendment claim against Goodman or other unnamed medical staff members. The Court therefore will allow Brooks an opportunity to amend his complaint to provide additional facts about the treatment that allegedly was denied and the HCJC staff who denied it. As currently pleaded, however, he does not state an Eighth Amendment claim against Goodman or any other unspecified medical staff at the HCJC.[3]

Brooks may not sue Jowers, a fellow inmate, under § 1983. "A § 1983 plaintiff may not sue purely private parties." *Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir. 1999). Thus, "[i]n order to be subject to suit under § 1983, [a] defendant's actions must be fairly attributable to the state." *Collyer v. Darling*, 98 F.3d 211, 231-32 (6th Cir. 1997). The mere fact that Jowers is an inmate in the custody of the State of Tennessee does not transform him into a state actor.

Richardson seeks to hold QCHC responsible for his allegedly inadequate medical treatment. "A private corporation that performs the traditional state function of operating

---

[3] The subsequent letters Brooks sent to the Court indicate his condition has worsened, (ECF Nos. 8, 10 & 11), but he still does not identify any other members of the medical staff at the HCJC or specify how those persons denied him adequate medical treatment.

a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). To prevail on a § 1983 claim against QCHC, Brooks "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Because Brooks does not allege that a policy or custom of QCHC was the "moving force" behind the alleged violations of his constitutional rights, he fails to state a claim against QCHC.

Brooks also fails to state a claim against the HCJC for similar reasons. The HCJC is not an entity subject to suit under § 1983. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). The Court will construe Brook's allegations as alleging claims against Henderson County, which may be held liable *only* if Williams's injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). Brooks does not allege that a Henderson County custom or policy is responsible for the inadequate safety that led to his attack, and he therefore does not state a claim against Henderson County.

In a fourteen-page, difficult-to-read letter submitted to the Court, Brooks appears to take issue with his criminal charges, conviction, and/or sentence. (ECF No. 9.) To the extent that Brooks may be asking this Court to intervene in an ongoing criminal proceeding, the Court cannot do so. Under the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Sixth Circuit has explained that "[t]he Act thereby creates 'an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions,' which are set forth in the statutory language." *Andreano v. City of Westlake*, 136 F. App'x 865, 879-80 (6th Cir. 2005) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)). Federal injunctions against state criminal proceedings can be issued only "under extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Younger v. Harris*, 401 U.S. 37, 45 (1971) (internal quotation marks and citation omitted). The Supreme Court has emphasized that

> [c]ertain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Id.* at 46. In this case, Brooks does not allege the type of extraordinary circumstances that would permit the Court to become involved in his state-court criminal matter.

To the extent Brooks wishes to challenge a state-court conviction or sentence in this lawsuit, he may not do so. "[H]abeas corpus is the exclusive remedy for a state prisoner

11

who challenges the fact or duration of his confinement . . . even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)). If Brooks wishes to contest his conviction or sentence, he must do so in a petition filed under 28 U.S.C. § 2254.

For these reasons, Brooks's complaint fails to state a claim and is subject to dismissal.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds that Brooks should be given an opportunity to amend his complaint.

In conclusion, Brooks's complaint is DISMISSED for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend, however, is GRANTED. Any amendment must be filed within twenty-one (21) days after the date of this order, on or before **January 21, 2019**.

Brooks is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The text of the

complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each defendant sued in that count. If Brooks fails to file an amended complaint within the time specified, the Court will dismiss the case in its entirety, assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

                                       s/ **James D. Todd**
                                       JAMES D. TODD
                                       UNITED STATES DISTRICT JUDGE